J-A16019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HEIDI MARLENI DAVILA JIMENEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VALENTIN GEORGE IONESCU | : | |
| | : | |
| Appellant | : | No. 2670 EDA 2024 |

Appeal from the Order Entered September 9, 2024
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s): Case ID No: 758300860,
DR-0031621

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:　　　　　**FILED SEPTEMBER 26, 2025**

Valentin George Ionescu (Father) appeals *pro se* from the order entered by the Northampton County Court of Common Pleas which modified his child support obligation for his three sons with Heidi Marleni Davila Jimenez (Mother): D.I. (age 16), J.I. (age 14), and K.I. (age 11) (collectively, the Children). After review, we affirm.

This case has a lengthy procedural history, with many orders entered by several different judges. In its Appellate Rule 1925(a) opinion, the trial court provided the following recent procedural history, in relevant part:

> On March 24, 2023, [Mother] filed a new Complaint for Support, seeking to establish support for three (3) children. The parties were ordered to appear at a support conference on May 23, 2023. On May 24, 2023, following the conference, Judge Roscioli entered an Order directing [Father] to pay $1,571.00 per month for support, effective

March 23, 2023, allocated as $1,428.00 per month for basic support and $143.00 for arrears.

On June 7, 2023, [Father] filed a demand for de novo hearing and the parties were ordered to appear at [a] hearing on August 14, 2023. That hearing was subsequently rescheduled to September 5, 2023. [. . .]

On September 5, 2023, the parties appeared before the Honorable Abraham P. Kassis for the scheduled de novo hearing, after which the matter was taken under advisement. [. . .] On September 28, 2023, [Father] filed a Petition for Modification seeking to decrease the support order based on a decrease in income due to change of circumstances. The parties were ordered to appear at a modification conference on November 6, 2023.

On October 20, 2023, Judge Kassis entered an Order noting that the matter had been listed on [Father's] objections to the order of [c]ourt dated May 24, 2023, and after hearing on September 5, 2023, the May 24, 2023 Order was made final. On November 8, 2023, following the scheduled modification conference, Judge Roscioli entered an Order of Court directing [Father] to pay $1,549.00 per month for the support of 3 children, effective September 19, 2023, allocated as $1,219.00 per month for basic support and $258.00 for arrears. As of the November 8, 2023 Order, [Father's] arrears totaled $6,094.26.

On November 17, 2023, [Father] filed a Notice of Appeal of the October 20, 2023 Order. On November 22, 2023, Judge Kassis entered an Order directing [Father] to file a "Statement of Errors Complained of on Appeal" pursuant to Pa.R.A.P. No. 1925 within twenty-one (21) days [. . . .] [Father] failed to file a Statement of Errors Complained of on Appeal by the December 13, 2023 deadline. The appeal of the October 20, 2023 Order was discontinued in the Superior Court on December [15], 2023.

Also on November 17, 2023, [Father] filed a demand for de novo hearing on Judge Roscioli's November 8, 2023 Order. The parties were ordered to appear at a hearing on January 2, 2024. That hearing was subsequently rescheduled to February 5, 2024.

[. . .]

On February 5, 2024, the parties appeared before Judge Kassis for the de novo hearing scheduled on [Father's] objections to the November 8, 2023 Order. On February 16, 2024, Judge Kassis entered an Order modifying [Father's] support obligation to $1,335.00 per month, allocated $1,212.00 for basic support of 3 children and $123.00 for [arrears]. The Order was based on a recalculation of [Father's] most recent paystubs, resulting in an average monthly gross income of $4,932.00 and an adjusted monthly net of $3,907.00.

On March [20], 2024, [Father] filed a Petition for Modification, seeking to decrease his support obligation based on multi-family considerations. The parties were ordered to appear at a modification conference on April 29, 2024. At [Father's] request, that conference was continued to May 20, 2024. On May 22, 2024, following the conference, Judge Roscioli entered an Order setting [Father's] child support obligation at $1,252.00 per month, allocated $1,138.00 for basic support and $114.00 for arrears, effective March 15, 202[4]. [Father's] arrears were noted to be $3,989.56. The May 22, 2024 Order specifically noted that it took into consideration the multiple family calculation.

On June 7, 2024, [Father] filed a demand for de novo hearing of the May 22, 2024 Order. The parties were ordered to appear at a modification hearing on August 12, 2024. That hearing was continued, at [Mother's] request, to September 3, 2024. [. . .]

[. . .]

On September 3, 2024, the parties appeared before the undersigned for the scheduled de novo hearing. On September [9], 2024, [the trial court] entered the Order currently on appeal. Pursuant to [the] September [9], 2024 Order, [Father] was directed to comply with a modified order of court setting his support obligation in the total sum of $1,482.00 per month, allocated $1,236.00 for the basic support of three (3) children and $246.00 for arrears.

[Father's] support obligation was based upon [Mother's] adjusted monthly net income of $2,760.00 and [Father's] adjusted monthly net income of $3,975.00. [Mother's] income was based on a tax filing status of head of household claiming 4 exemptions and included a child tax credit of $5,560.00. [Father's] adjusted net income was based upon a tax filing status of head of household claiming 2 exemptions, as that was what [Father] reported his status would be for 2024. The September [9], 2024 Order specifically indicated that the multiple family calculation was run for [Father's] additional child in his household, however, that calculation had no effect on the recommended amount of [Father's] support obligation.

Trial Court Opinion (T.C.O.), 12/2/24, 1-6 (internal citations omitted).

Father timely filed this appeal. He raises the following seven issues for our review, which we reorder for ease of disposition:

1. Did the trial court err as a matter of law and abuse its discretion by failing to accurately calculate [Father's] income in accordance with Pa.R.C.P. 1910.16-2, including improperly excluding allowable deductions, mischaracterizing [Father's] tax filing status, and issuing inconsistent support orders based on flawed income determinations, thereby violating the child support guidelines?

2. Did the trial court err as a matter of law and abuse its discretion by failing to properly apply the multi-family adjustment mandated under Pa.R.C.P. 1910.16-7, including imputing fictitious income to the parent of [Father's] new child, and failing to account for the financial impact of [Father's] additional family circumstances?

3. Did the trial court err as a matter of law and abuse its discretion by failing to adequately consider the substantial change in [Father's] family circumstances, including the birth of a new child and the other parent's lack of income, resulting in support orders inconsistent with Pa.R.C.P. 1910.16-1 through 1910.16-7?

4. Did the trial court err as a matter of law and abuse its discretion by issuing support orders with conflicting arrears amounts, increasing the arrears payment percentage without adequate justification or proper financial assessment, and failing to account for [Father's] consistent payment history, thereby violating Pa.R.C.P. 1910.16-4 and creating an undue financial burden?

5. Did the trial court err in calculating arrears by using incorrect income calculations and issuing conflicting arrears balances?

6. Did the trial court commit procedural errors by overruling [Father's] objections to speculative or irrelevant allegations and failing to consider filed financial information?

7. Did the trial court deviate from Pennsylvania's child support guidelines without justification, creating an unreasonable financial burden on [Father]?

Father's Brief at 3-4. Although Father raises seven issues in his statement of the questions involved, he argues only six issues in his brief. His fourth and fifth issues are both related to arrears; he combines them into one argument section in his brief. Thus, we will address those two issues together.

Our standard of review in matters concerning child support orders is well-settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that

- 5 -

the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Sichelstiel v. Sichelstiel*, 272 A.3d 530, 534 (Pa. Super. 2022) (quoting *Silver v. Pinskey*, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (further citation omitted). To the extent that Father's claims also "involve interpretation and application of the [Pennsylvania] Rules of Civil Procedure, which are questions of law, we employ a *de novo* standard of review and plenary scope of review." *C.H.Z. v. A.J.Y.*, 262 A.3d 604, 607 (Pa. Super. 2021) (citation omitted).

"[C]hild support awards are calculated in accordance with specific statutory guidelines, using a complex system that accounts for the obligor's capacity to pay and the reasonable needs of the particular children." *Id.* (citation omitted). The guidelines provide detailed instructions for calculating support awards based on the obligor's monthly net income. *Id.*; *see also* 23 Pa.C.S.A. § 4322(a); *and see* Pa.R.C.P. 1910.16-2. Generally, the amount of support to be awarded is based upon the parties' monthly income over at least a six-month average. *See* Pa.R.C.P. 1910.16-2(a). Further, "there is a rebuttable presumption that the guideline-calculated support obligation is the correct support obligation." Pa.R.C.P. 1910.16-1(d).

We begin by noting that, in his brief, Father raises arguments related to previous hearings before the trial court and resulting orders. We clarify for Father that the issues currently before this Court in this appeal relate to the September 3, 2024 *de novo* hearing before the trial court, and the resulting

September 9, 2024 support order that is on appeal.[1]  We will only address Father's arguments that are properly before us in this appeal.

Father also fails to cite any case law to support his arguments throughout the argument section of his brief, in apparent circumvention of our Appellate Rules.  **See** Pa.R.A.P. 2119(a)-(b).  Additionally, although Father broadly cites Pennsylvania Rules of Civil Procedure to support his arguments, he largely fails to tell us which specific subsections of those Rules apply, or how the trial court misapplied those Rules such that reversal is required. Likewise, he fails to argue how the court abused its discretion in applying these Rules.  We remind Father that his *pro se* status affords him no special benefit, and he must comply with our Rules of Appellate Procedure.  **See Commonwealth v. Vurimindi**, 200 A.3d 1031, 1037-38 (Pa. Super. 2018) (citations omitted).  Moreover, "any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing."  **See id.** (citation omitted).

In his first appellate issue, Father argues that the trial court erred in calculating the parties' incomes, resulting in inconsistent and unjust support obligations.  Father's Brief at 6.  Father claims that the various support orders entered in this case had different support amounts, even though the parties'

---

[1] The support order currently on appeal was dated September 6, 2024; filed on September 9, 2024; and mailed to the parties on September 10, 2024.  For consistency, we refer to this order by its filing date of September 9, 2024.

incomes did not change, which violated the "principle of consistency" in Pennsylvania Rule of Civil Procedure 1910.16-2(d). *See id.* at 7. However, Father later seems to contradict himself by saying that his income did change, which mandated adjustments in the support calculations. *See id.* at 7-8. Father also broadly asserts that the trial court disregarded several of the allowable deductions under the Pennsylvania Rules of Civil Procedure, including payroll deductions and other necessary expenses. *See id.* at 7. Father claims that the trial court improperly changed his tax filing status to head of household with two exemptions. *See id.* at 10-11.

The trial court responded to Father's arguments as follows:

> Contrary to [Father's] assertions, each of these alleged errors is without merit. Upon review of the support orders entered in the instant matter, it is clear that each of the orders did, in fact, establish a different support obligation amount for [Father]. This, however, is not and does not establish an error of law. Each of the support orders entered in this matter [was] mailed to the parties and their counsel and each order had the calculations enclosed therewith. A review of those orders and calculations reveals differences in the parties' incomes and other various factors that resulted in the respective support orders being entered in their respective amounts. [Father] does not point to any specific error in any of the calculations, but simply alleges that the differences in the amounts of the calculations demonstrate error by the [c]ourt. This is simply not the case, as each Order was properly calculated using the guidelines and formulas set forth in Pa.R.C.P. No. 1910.16-1 through 1910.16-7, including the multiple family calculations provided for in 1910.16-7.
>
> [Father] also alleges that we did not consider all [Father's] allowable deductions or expenses under the support guidelines and the allowable deductions from [Father's] paystubs. In the course of the hearing on

September 3, 2024, [Father] did not raise the issue of any deductions or expenses not being considered or calculated. [Father] failed to raise as an issue, or create a record to establish, that any deductions or expenses from [Father's] paystubs or tax returns were improperly excluded from the support calculation. As noted herein, the September [9], 2024 Order of [c]ourt modified [Father's] support obligation to $1,428.00 per month, allocated $1,236.00 for the support of 3 children and $246.00 for arrears. The calculations and figures utilized to establish this support obligation were enclosed with the Order when it was sent to the parties. During the course of the September 3, 2024 hearing, [Father] submitted his 2023 Federal tax returns and additional pay stubs. These documents were used in calculating [Father's] support obligation, which was determined pursuant to the applicable rules, guidelines and formulas set forth in the Pennsylvania Rules of Civil Procedure.

As the final portion of his first alleged error, [Father] alleges that we "changed [Father's] filing status in Head of Household claiming 2 exemptions, that had not been filed and realized." In the course of the hearing, [Father] submitted his 2023 Federal Tax Return. We did not "change his filing status", but rather utilized [Father's] tax returns, along with his testimony regarding his current family situation at the September 3, 2024 hearing to properly determine his filing status for purposes of the support calculation.

Based upon the above, [Father's] first alleged error, "Improper Income Calculation", is without merit.

T.C.O. at 7-9 (internal citations omitted).

To begin, we note that although the trial court has entered multiple support orders with different support amounts throughout the life of this case, that does not, by itself, constitute an error or an abuse of discretion. Additionally, many of the support orders were entered after Father claimed

that the prior order was incorrect or should be modified. Thus, the volume of support orders in this case is largely of Father's own making.

Next, although Father broadly claims that the trial court erred in calculating the parties' incomes, he fails to tell us what the exact error was, *i.e.*, the amount of the miscalculation. Thus, we could find this issue waived for lack of development. *See B.S.G. v. D.M.C.*, 255 A.3d 528, 535 (Pa. Super. 2021) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted). However, in the interest of judicial economy and after a review of the *de novo* hearing transcript, we decline to find waiver. Instead, we observe that Father argued to the trial court that there was approximately a $300 discrepancy in his gross income. *See* N.T., 9/3/24, at 9. Father claimed that the previous support order from May 22, 2024 showed $4,897 for his income, whereas his current paystubs showed $4,560. *See id.* After the *de novo* hearing, the trial court entered the support order now on appeal, which again reflected that Father's total gross monthly income was $4,897.

We disagree with Father that his paystubs conflicted with the gross monthly income amount the trial court utilized. Instead, all the paystubs that Father provided at the *de novo* hearing showed that he was paid at an hourly rate of $28.25. An hourly rate of $28.25 yields a gross yearly income of $58,760 ($28.25 hourly rate multiplied by 40 hours per week, multiplied by

52 weeks per year to represent full-time employment). A gross yearly income of $58,760, when divided by 12 months, equals a rounded gross monthly income of $4,897 per month, *i.e.*, the total gross monthly income the trial court attributed to Father. Father made no argument at the *de novo* hearing, nor does he make any argument on appeal, that his income should not have been assessed using his hourly rate and full-time employment hours. We discern no error of law or abuse of discretion in the trial court's calculation of Father's gross monthly income.

Similarly, Father also claims that the trial court disregarded several allowable deductions from his income, but he fails to tell us what deductions were supposedly disregarded. Instead, Father broadly claims that there were mandatory payroll deductions and other necessary expenses that are "evident" in his pay stubs and tax returns. **See** Father's Brief at 7. Contrary to Father's claim, any such amounts are not "evident" to this Court. The amounts were also not evident to the trial court, which noted in its opinion that Father had failed to create a record to establish that any deductions or expenses were improperly excluded from the support calculation. **See** T.C.O. at 8. A review of the *de novo* hearing transcript confirms that Father did not argue to the trial court at the hearing that there were missing deductions or expenses in the previous support calculation. Thus, the trial court's review of Father's claim and our subsequent appellate review has been impeded.

Moreover, it is well-settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." **See** Pa.R.A.P. 302(a). Father claims that he "filed multiple Modification requests, De novo requests, Motions for Reconsideration, and Notices of Appeal on respective support orders and requested income and arrears recalculation." Father's Brief at 7. We again remind Father that previous arguments he made which resulted in other support orders are not before this Court in this appeal.

Additionally, regardless of what Father argued to the trial court, we remind him that, on appeal, this Court will not act as an advocate or develop arguments on behalf of an appellant. **Interest of R.H.**, 320 A.3d 706, 716 (Pa. Super. 2024) ("It is not the obligation of this Court [] to formulate Appellant's arguments for him.") (citation omitted). If an issue is not properly developed with citation to legal authority; it is waived. **See B.S.G.**, 255 A.3d at 535 ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted). Nor will we scour a record to find evidence to support an appellant's argument. **See Milby v. Pote**, 189 A.3d 1065, 1079 (Pa. Super. 2018) ("We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived.") (citation omitted). In his brief, Father failed to tell us what

expenses or deductions the trial court allegedly improperly disregarded.  Thus,

he failed to properly develop this argument, and we find the issue waived.

Even if not waived, Father's argument would fail.  Pennsylvania Rule of

Civil Procedure 1910.16-2(c)(1) provides:

**(c) Monthly Net Income.**

(1) Unless these rules provide otherwise, the trier-of-fact shall deduct only the following items from monthly gross income to arrive at monthly net income:

(i) federal, state, and local income taxes;

(ii) unemployment compensation taxes and Local Services Taxes (LST);

(iii) F.I.C.A. payments (Social Security, Medicare and Self-Employment taxes) and non-voluntary retirement payments;

(iv) mandatory union dues; and

(v) alimony paid to the other party.

Pa.R.C.P. 1910.16-2(c)(1).

In its calculations, the trial court appropriately deducted expenses from

Father's income including federal, state, and local taxes, and F.I.C.A.

payments.  *See id.*  As noted, Father presents us with no argument that he

had other taxes, non-voluntary retirement payments, or mandatory union

dues that should have also been deducted, and there is no evidence that he

paid alimony to Mother.  Father's paystubs reflect additional withholdings for

"PA Unemploy," "PA EMMAU-Leh I," and "PA LEMMA-Leh L" and a deduction

for "401k Emp."  Although we cannot replicate the trial court's calculations

- 13 -

exactly, it appears that the court included the amount of Father's withholding for "PA Unemploy" in its deduction for his state tax obligation.[2] We have no facts or argument before us related to Father's "401k Emp" withholding, and whether it is a non-voluntary retirement payment, such that the trial court should have deducted that amount from his monthly gross income for support purposes. Additionally, we have no facts or argument before us that would enable this Court to determine: 1) what the "PA EMMAU-Leh I" and "PA LEMMA-Leh L" withholdings from Father's pay are, 2) if the trial court should have deducted those items, or 3) if the trial court deducted those items within its calculations. Thus, Father's argument would merit no relief.

Lastly, Father argues that the trial court misclassified his tax status as head of household. Father's tax status was married filing separately on his 2023 federal tax return, which he provided at the *de novo* hearing, and he listed the name of his spouse on that return. The trial court noted that it used Father's tax returns and his testimony regarding his current family situation

_____

[2] The trial court used a monthly gross income amount of $4,892.67 to calculate Father's federal, state, and local taxes (original monthly gross income of $4,897.00 minus a monthly expense of $4.33). Taking $4,892.67 multiplied by a state tax rate of 3.14%, equals a $153.63 monthly deduction from Father's pay for state tax, as shown in the trial court's calculations. Similarly, on one of Father's paystubs where he worked 80 hours (over a two-week pay period) at a rate of $28.25 per hour, his gross earnings were $2,260. His employer then withheld $69.38 for "PA Income Tax" and $1.58 for "PA Unemploy" for a total withholding of $70.96. This amount ($70.96) is approximately 3.14% of Father's gross earnings ($2,260). Thus, Father's employer used the same percentage as the trial court (3.14%) to deduct Father's state taxes and the "PA Unemploy" withholding.

at the hearing to determine his filing status. However, after reviewing the hearing transcript, we see no testimony from Father specifically related to his tax status, although he did testify to the birth of his new child. *See* N.T., 9/3/24, at 3.

Nevertheless, again, Father fails to tell us why the trial court using this status was an error. Father simply states that his "status on his filed 2023 Tax Return is not clearly the Head of Household with 2 exemptions . . . ." Father's Brief at 11. And that this classification "was erroneous and contradicted the evidence submitted . . . ." *Id.* Additionally, "[t]his misclassification further distorted the adjusted net monthly income" used to calculate his support obligation. *See id.* Although we acknowledge that Father told this Court at oral argument that his tax status should be married filing separately, he fails to tell us his tax status for 2024 in his brief. Moreover, Father's Appellate Rule 1925(b) statement raises an issue related to his tax status as, in relevant part: "The de novo court Order changed [Father's] filing status [to] Head of Household claiming 2 exemptions, *that had not been filed and realized*." Statement of Errors Complained of on Appeal, 10/29/24 (emphasis added). Thus, Father's 1925(b) statement does not assert that his tax status as head of household was incorrect, but merely argues that his tax return, presumably with a head of household status, had not yet been filed and realized. Father's statement also, again, fails to tell us what his proper tax status is. Moreover, Father does not tell us how a change

- 15 -

in his tax status miscalculated his support obligation and by how much, to allow us to determine if it was a *de minimus*, *i.e.*, negligible, change. Again, we will not make this argument for him. **See R.H., supra**; **Milby, supra**. Father's first issue merits no relief.

Father's second and third appellate issues are interrelated; thus, we address them together. Father argues that the trial court failed to properly apply the multi-family adjustment pursuant to Pennsylvania Rule of Civil Procedure 1910.16-7. **See** Father's Brief at 12. Father claims the trial court imputed income for the other parent of his newborn child, even though she has no income. **See id.** Father asserts that his new child and the other parent's lack of income constituted a substantial change in circumstances, and the trial court failed to appropriately adjust his support obligation. **Id.** at 14. Lastly, to the extent Father repeats his arguments from other issues, we address those arguments in our analysis of his other issues.

The trial court explained its rationale related to the multiple family calculation as follows:

> A review of the calculations appended to the September [9], 2024 [order] clearly establishes that we did not commit an error of law or abuse our discretion in setting [Father's] support obligation. [Father's] adjusted monthly net income was determined to be $3,975.00. The support calculation was run utilizing the required guidelines and formulas, and [Father's] support obligation for the 3 children that are the subject of the instant matter was set at $1,236.00 per month. The multifamily calculation was run and [Father's] potential support obligation to the new child in his current residence was determined to be $716.00. Therefore, [Father's] total monthly support obligation with the

multifamily adjustment totaled $1,952.00, which is less than 50% of his monthly net income. As a result, there was no deviation from the basic support obligation on the ground of the existence of a new family.

Similarly, we did not ignore a substantial change in circumstances for [Father], as the multifamily calculation is specifically intended to take into account substantial changes such as a new family and new child. While [Father] argues that we failed to consider the other parent's lack of income from the birth of the child, at no time during the September 3, 2024 hearing did [Father] raise the issue of the other parent's income. Based upon the above, it is respectfully suggested that [Father's] second and third alleged errors on appeal are without merit[.]

T.C.O. at 11-12 (internal citations omitted).

Father's argument misapprehends the law and fails to appreciate our standard of review in support cases. We can only reverse where the trial court's order cannot be sustained on **any** valid ground. **See Sichelstiel**, 272 A.3d at 534 (citation omitted). "An abuse of discretion is not merely an error of judgment[.]" **Id.** (citation omitted).

Pennsylvania Rule of Civil Procedure 1910.16-7 provides, in relevant part:

**(a)** When an obligor's basic child support obligations total 50% or less of the obligor's monthly net income, there will be no deviation from the basic support obligation on the ground of the existence of a new family.

**(b)** When the total of the obligor's basic support obligations exceeds 50% of the obligor's monthly net income, the trier-of-fact may proportionately reduce the basic support obligations.

Pa.R.C.P. 1910.16-7.

- 17 -

Here, the trial court's calculations show that the court ran the multiple family calculation, but the calculation did not change the amount of Father's child support because his monthly child support obligation for all of his children was less than 50% of his monthly net income. *See id.* Within the trial court's calculations, it assigned to the other parent of Father's new child a monthly net income of $2,760.02, which was equivalent to Mother's monthly net income, as noted in the calculations. Although Father claims that the mother of his new child does not have any income, he did not make that argument at the *de novo* hearing, even though he argued that the multiple family calculation was not correctly applied. *See* N.T., 9/3/24, at 3-6.

Father states in his brief that "[d]uring the May 2024 conference hearing, it was noted that the other parent of the [Father's] new child has no income from the birth of the child . . . ." Father's Brief at 18. However, Father does not explain what evidence he provided, other than his testimony, to show that the other parent has no income. Additionally, although Father included conference notes from the May 2024 hearing in his reproduced record, we do not see those notes in the certified record. It is well settled that the burden is ultimately on the appellant to ensure that the certified record is complete on appeal. *See* Pa.R.A.P. 1921, Note; *see also, e.g., Mazzarese v. Mazzarese*, 319 A.3d 586, 596 (Pa. Super. 2024) ("This Court has clearly stated it is the appellant's responsibility to ensure that the certified record contains all documents necessary so that this Court is able to review [his]

- 18 -

claims.") (citation omitted). It is also well settled that this Court may review and consider only items that are part of the certified record. ***See, e.g., Mazzarese***, 319 A.3d at 596 ("[W]e have long held any documents that are contained in the reproduced record but are not a part of the official certified record do not exist.") (citation omitted). Thus, we cannot consider the conference notes, nor would we because Father had a new obligation at the *de novo* hearing to produce this same evidence.[3]

Regardless, other than baldly asserting that the mother of his other child has no income, Father does not explain why the trial court assigning her some income was an abuse of discretion. Presumably, she has an earning capacity and ability to work. If she does not, Father presented no evidence of that before the trial court at the *de novo* hearing, and no evidence of that is present in the record for us to review on appeal. It goes without saying that Father's statements in his appellate brief regarding the other parent's income are not evidence of record upon which we could base our decision. ***See, e.g., Siravo v. AAA Trucking Corp.***, 452 A.2d 521, 522 (Pa. Super. 1982) ("It is, however, an equally basic law of evidence that statements by counsel in briefs are not themselves evidence and not of record.") (footnote with citations omitted); ***Hamaday v. Hamaday***, 305 A.3d 979, *9 (Pa. Super. 2023)

_____

[3] To the extent that Father included other items in his reproduced record that do not appear in the certified record, we have also declined to review those items.

("[S]tatements in briefs do not constitute evidence.") (citations omitted) (unpublished memorandum). Further, we remind Father that we can only reverse a support order where it cannot be sustained on *any* valid ground. *See Sichelstiel, supra* (citation omitted). Imputing an income, equal to Mother's income, on the parent of Father's new child, in the absence of persuasive contrary evidence regarding her earning capacity or ability to work, was reasonable. Based on the record presented at the *de novo* hearing, we discern no error of law or abuse of discretion.

In his fourth appellate issue, Father argues that the trial court's support orders contained conflicting arrears amounts because of incorrect income, support amounts, and adjustment calculations. *See* Father's Brief at 15. Father claims this violated Pennsylvania Rule of Civil Procedure 1910.16-4. *See id.* at 16. Father also asserts that the order "increased the arrears payment percentage from 10% to 20% without proper reasoning or financial assessment, especially given the change in [Father's] additional family circumstances and no modification in income." *Id.* Father claims that he was consistently paying his support obligation since September 19, 2023. *Id.* at 17. Thus, according to Father, the trial court erred as a matter of law and abused its discretion by increasing his arrears payment percentage to 20%. *Id.* at 18.

The trial court explained its rationale related to arrears as follows:

> Contrary to [Father's] assertions, the orders do not contain "conflicting arrears amounts." While the Orders do contain

*different* arrears amounts, this is simply the product of arrears being paid and/or accruing over time. During the September 3, 2024 hearing, while [Father] did, in fact, raise the issue of the calculation of the arrears, he did not specifically state which calculations of arrears were incorrect and/or why any of the calculations were incorrect. The most specific statement made by [Father] as to the arrears was when [Father] noted that "the May 22nd amount was the $4,771.84. The previous Order is $3,989.56." [Father] fails to argue, however, how an increase in the arrears of less than $800.00, when [Father] was not consistently paying his support obligation, would constitute appealable error. [Father] indicated that "[m]y argument is that the arrears do not reflect the correct amount . . . Because they don't reflect the correct amount." It is respectfully suggested that [Father's] argument on the issue of the calculation of arrears is without merit.

As to [Father's] argument that we erred by increasing the arrears payment percentage, it should be noted that [Father] has previously been required to pay 20% towards arrears. 23 Pa.C.S.A. § 4305 sets forth the powers and duties of the Domestic Relations Section and includes the power to "[i]ncrease the amount of monthly support payments for the payment of arrearages as may be provided by general rule or previous court order." 23 Pa.C.S.A. § 4305(b)([9]). In the course of the September 3, 2024 hearing, counsel for [Mother] indicated that "[t]he only thing I'm asking for today is, in light of the amount of the arrears balance[.] [I]nstead of the 10 percent for the arrears, we're asking for 20 percent." Under the circumstances in the instant matter, including the amount of arrears owed and the history of accrued arrears in the past, we determined it was appropriate to order [Father] to pay an additional amount/percentage toward arrears each month, and this was not an error of law.

T.C.O. at 12-13 (some internal citations omitted and emphasis in original).

Father's argument fails to appreciate our standard of review. As noted,

we can only reverse where the trial court's order cannot be sustained on ***any***

valid ground. *See Sichelstiel*, 272 A.3d at 534 (citation omitted). "An abuse of discretion is not merely an error of judgment[.]" *Id.* (citation omitted).

First, we reject Father's contention that the trial court erred because its orders contained different arrears amounts. Father broadly argues that those conflicting amounts were the product of incorrect income, support, and adjustments, without telling us, specifically, what the error was. The mere fact that different orders, entered at different times, contained different arrears amounts does not, by itself, constitute error.

As for the increase in the arrears payment percentage, Father cites no legal authority to support his assertion that the trial court needed to have "proper reasoning [and] financial assessment" to increase his arrears payment percentage to 20%. Instead, he is essentially asking us to reweigh the evidence and substitute our judgment for that of the trial court. That Father feels the trial court should not have increased the arrears payment amount does not constitute reversible error, as we cannot say that the trial court's order "cannot be sustained on any valid ground." *See Sichelstiel, supra* (citation omitted). Instead, the trial court determined that the increase was warranted given that arrears had accrued and the total amount of arrears owed; the May 22, 2024 support order noted an arrears amount of $3,989.56. This is a valid ground on which to base its decision. Moreover, we note that the total amount, with arrears, going to this family is $1,482, leaving $2,493 to him and his new family. Therefore, Father's fourth issue merits no relief.

In his fifth appellate issue, Father argues that the trial court committed procedural errors by overruling his objections to speculative or irrelevant evidence and failing to consider substantiated financial documents. Father's Brief at 20. Father claims that he was exposed to, *inter alia*, an "unreasonable, extensive, ad infinitum discovery process." **See id.** at 21. Father asserts that the trial court abused its discretion and displayed bias through one of its statements at the *de novo* hearing. **See id.** Father also claims that the trial court erred in "permitting irrelevant and unreasonable statements" during the hearings. **Id.** at 22. Thus, the May and September 2024 hearings were "sidetracked." **Id.**

Father's argument is unavailing. First, he fails to cite where in the record at the September 3, 2024 hearing the trial court erred by overruling his objections. In reviewing the transcript, we see only one time that Father objected. Mother's counsel made a statement about "trying to get to the bottom" of Father having income from another, undisclosed source. **See** N.T., 9/3/24, at 10. Father objected that "[t]hose are just improper." **Id.** The trial court overruled the objection. We discern no abuse of discretion or error of law as Father failed to state a valid basis for his objection. Further, he does not argue on appeal why this was a valid objection, beyond bald assertions that he objected to baseless allegations and the misrepresentation of one of his tax forms. **See** Father's Brief at 20.

There is also no evidence that the trial court failed to consider substantiated financial documents, as the trial court allowed Father to submit his pay stubs and 2023 tax returns and specifically stated that those would be considered. *See* N.T., 9/3/24, at 8-9. Moreover, the trial court noted in its opinion that "while [Father's] objection during the de novo hearing was properly overruled, none of the objected to statements or documents formed the basis of our calculation of [Father's] support obligation." T.C.O. at 15.

Additionally, we see no evidence that the trial court was biased against Father. Father takes issue with this statement from the trial court: "I know if my kids were hungry, I would want them to get every cent that they possibly could, sir." *See* N.T., 9/3/24, at 10. The trial court made that statement while questioning Father on whether he had another source of income. *See id.* We fail to see how that statement shows bias.

As for Father's other arguments, we fail to see how the "discovery process" is relevant to the issues before us in this appeal.[4] As explained, Father has appealed from a support order, not an order related to discovery. He does not cogently explain to us how the discovery process impacted the support order that is currently on appeal. Moreover, Father did not raise an issue specifically related to discovery in his Appellate Rule 1925(b) statement for this appeal. *See* Statement of Errors Complained of on Appeal, 10/29/24.

_____

[4] We note that Father has another appeal listed separately before this panel at 3373 EDA 2024 in which he raises a multitude of issues related to discovery.

Thus, even if discovery was relevant to this appeal; Father waived that argument. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Father's issue merits no relief.

In his final appellate issue, Father largely repeats the arguments he made throughout his brief by asserting that the trial court deviated from the child support guidelines without providing adequate reasons or justifications. **See** Father's Brief at 18. Father argues that the deviations included: incorrect income calculations (including income for the other parent of Father's new child), arbitrary adjustments, and an increase in the arrears payment percentage. **See id.** at 18-19. We have already addressed these arguments above; thus, we need not address them again.

In sum, Father has waived many of his claims by failing to comply with our Rules of Appellate Procedure and appropriately develop his arguments. For the issues that Father properly preserved and argued, we discern no error of law or abuse of discretion upon review of the trial court's support order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/26/2025